UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TODD E. TRIPP, ET AL.                                  CIVIL ACTION

VERSUS

JEFFREY M. LANDRY, *in his*                      NO. 22-00333-BAJ-SDJ
*official capacity as Attorney General*
*of the State of Louisiana*, ET AL.

<u>**RULING AND ORDER**</u>

Before the Court is Defendant Landry's[1] **Attorney General's Motion To Dismiss For Lack Of Subject Matter Jurisdiction And Failure To State A Claim (Doc. 84, the "Motion")**. Plaintiffs oppose the Motion. (Doc. 87). Defendant filed a Reply. (Doc. 89).

For the following reasons, the Motion (Doc. 84) will be **DENIED**.

## I.    BACKGROUND

This case arises out of an allegedly unconstitutional Louisiana state law that compels individuals convicted of certain sex offenses to comply with notification requirements. (*See* Doc. 27).

For present purposes, the following facts are taken as true:

Plaintiff Todd Tripp ("Plaintiff Tripp") and Plaintiff Richard Okurowski ("Plaintiff Okurowski") are required to register as sex offenders under the laws of Louisiana as a result of prior convictions. (*Id.* ¶ 4b). As such, they have been and

---

[1] The Motion is filed by Liz Murrill, the current Attorney General of the State of Louisiana.

continue to be subject to the notification requirements imposed by La. Stat. Ann. § 15:542.1 (2012). (*Id.*).

In the time between periods of incarceration, Defendant Tripp was already subject to the Louisiana sex offender registration regime. (Doc. 87 at 9). At the time Defendant filed the Motion, both Plaintiffs were incarcerated in the Iberville Parish Jail. (*Id.* ¶ 4a). Plaintiff Tripp was incarcerated pretrial, and Plaintiff Okurowski was incarcerated post conviction.[2] (*Id.*). Defendant Tripp has since been transferred from Iberville Parish Jail to the Federal Correctional Institution, Seagonville in Texas. (*See* Doc. 91). As of October 2024, Defendant Tripp was serving a 234-month sentence pursuant to a guilty plea for one count of receipt of child pornography after being sentenced in the United States District Court for the Middle District of Louisiana. (Doc. 84-1 at 9). He is currently being prosecuted under La. Stat. Ann. § 15:542.1(D) in the case captioned *State of Louisiana v. Todd Tripp*, No. 43,259, in the Twenty-Third Judicial District Court, Ascension Parish, State of Louisiana, for allegedly failing to comply with the statute's "networking website" notification requirement. (Doc. 87 at 9; *See* Doc. 87-1).

The statute requires Plaintiffs and other classes of persons who are similarly situated to notify certain individuals and the public about their sex offender status. (*Id.* ¶ 4c). The notifications must include the Plaintiffs' name, the crime they were

---

[2] It is not entirely clear to the Court from the Complaint and the Parties' filings the nature of the criminal cases for which Plaintiffs were incarcerated at the time Plaintiffs filed the Complaint.

2

convicted of, address, physical description, and a photograph. (*Id.*). The statute requires that, within 21 days of conviction or release from prison, and every five years thereafter, Plaintiffs must give notice by mail to every residence and business within a designated radius of their address at Plaintiffs' own expense. (*Id.* ¶ 4d). Plaintiffs must also place a two-day notice in a newspaper to notify the public at large, also at Plaintiffs' own expense. (*Id.*). Plaintiffs are also required to provide this notice every time they change their address. (*Id.*).

The notifications are written in the first person, appearing as if Plaintiffs are speaking of their own free will and endorsing the notification message. (*Id.* ¶ 4e). However, the statute specifies the contents of the notification, what Plaintiffs must say, when they must say it, where they must say it, and to whom they must say it. (*Id.*). The statute also gives courts the authority to order Plaintiffs to display signs, handbills, bumper stickers, and clothing that labels them as sex offenders against their will. (*Id.* ¶ 4f). In addition, the statute requires Plaintiffs to post their sex offender status on any "social networking" profile they may have. (*Id.* ¶ 4g). Plaintiffs claim that this requirement discourages Plaintiffs from speaking and participating in the virtual public forum and therefore having their voices heard "equally." (*Id.*). Plaintiffs strongly object to being forced to speak and disseminate information they disagree with and otherwise do not wish to share. (*Id.* ¶ 4h).

Plaintiffs argue that the statute imposes an undue burden on them and only serves to further stigmatize them, especially considering that their sex offender status is available to the public on the "National Sex Offender Public Website."

(*Id.* ¶ 4h). Plaintiffs have complied with the statute's notification requirements out of fear in the past. (*Id.* ¶ 4i). However, Plaintiffs now assert that upon release, they will have to choose to either (1) continue to comply and thereby allegedly violate their rights; or (2) defy the statute's notification requirements, subjecting them to felony prosecution under La. Stat. Ann. § 15:542.1.4(A)(1) (2014). (*Id.*). Those convicted under La. Stat. Ann. § 15:542.1.4(A)(1), face a sentence of between two and ten years in prison. (*Id.*).

Plaintiffs argue that the fact that the statute compels Plaintiffs to speak under threat of felony prosecution violates Plaintiffs' right to be free from compelled speech under the First Amendment to the United States Constitution. (*Id.* ¶ 4j). Plaintiffs also allege that the statute violates the right to due process and equal protection under the law guaranteed by the Fourteenth Amendment to the United States Constitution. (*Id.*).

Plaintiffs seek a declaration that La. Stat. Ann. § 15:542.1 "is unconstitutional on its face and/or as applied to plaintiffs." (*Id.* ¶ 5a). Plaintiffs also seek a declaration that La. Stat. Ann. § 15:542.1 violates their rights under the First and Fourteenth Amendments of the United States Constitution. (*Id.* ¶ 5b). Finally, Plaintiffs seek a permanent injunction enjoining Defendants from enforcing or initiating prosecution against Plaintiffs under the statute. (*Id.* ¶ 5c).

In her Answer to the Complaint, Defendant asserted the following defense: "Plaintiff's [sic] Complaint fails to state a claim for a violation of the First Amendment because sex offender registration and notification requirements under the Louisiana

4

laws and statutes do not constitute protected speech." (Doc. 9 at 2).

## II.    LEGAL STANDARD

Defendant seeks to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6).

### 1.  Rule 12(b)(1)

Under Rule 12(b)(1), a claim is "'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). To "prevent[ ] a court without jurisdiction from prematurely dismissing a case with prejudice," a court should consider a Rule 12(b)(1) motion for lack of subject-matter jurisdiction before addressing any motions that concern the merits of a case. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286–87 (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

Under Rule 12(b)(1), "the [C]ourt is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte,* 536 F.3d 439, 449 (5th Cir. 2008); *Lane ex rel. Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008) ("[T]he court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (internal quotation marks omitted)).

### 2. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*citing Twombly*, 550 U.S. at 556). When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). Conclusory allegations or legal conclusions are insufficient defenses to a well-pled motion to dismiss. *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017).

6

## III.  DISCUSSION

Defendant raises several arguments in her Motion. First, Defendant argues that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine. Second, Defendant asserts that Plaintiff Tripp's claims are not ripe for judicial review. Third, Defendant contends that Plaintiffs have waived their right to challenge the constitutionality of the statute. Fourth, Defendant argues that Plaintiffs have failed to state a plausible First Amendment claim.

As a preliminary matter, Plaintiffs argue that Defendant has waived any Rule 12(b)(6) defenses. Plaintiffs also assert that Defendant has not sought dismissal of its Fourteenth Amendment claim.

The Court will address each argument in turn.

### 1.  Rule 12(b)(1) Arguments

The Court will address each Rule 12(b)(1) argument individually.

#### a.  The Court's Jurisdiction Under the *Rooker-Feldman* Doctrine

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The *Rooker-Feldman* doctrine is one of several doctrines viewed as a safeguard against federal intrusion into the dual court system. *See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Cir. v. Feldman*, 460 U.S. 462 (1983). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005),

the Supreme Court of the United States narrowed this doctrine to specifically deprive federal district courts of jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." "Reduced to its essence, the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments except when authorized by Congress." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 382 (5th Cir. 2022).

"[I]n addition to the precise claims presented to the state court, *Rooker-Feldman* prohibits federal court review of claims that are 'inextricably intertwined' with a state court decision." *Id.* (citations and quotations omitted). *Id.* "[A] party losing in state court is barred from seeking in substance what would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994).

The United States Court of Appeals for the Fifth Circuit has held that a court should carefully evaluate what it is asked to review and reject in determining whether to apply *Rooker-Feldman*. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) (citing *Exxon Mobil*, 544 U.S. at 284). The Supreme Court has made clear that *Rooker-Feldman* does not prohibit federal plaintiffs from "present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *See Exxon Mobil*,

8

544 U.S. at 293. "[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Skinner v. Switzer*, 562 U.S. 521, 523 (2011).

Defendant argues that the obligation to register as a sex offender under Louisiana's statutes is so intertwined with state court criminal litigation that this Court is prohibited from entertaining Plaintiffs' claims. (Doc. 84-1 at 7–8). She asserts that by presenting their claims as facial challenges to the statute, Plaintiffs seek federal review of the underlying state court judgments and sentencing. (Doc. 89 at 4).[3] Defendant contends that if Plaintiffs are aggrieved by their plea agreements or wish to contest their terms, they must return to state court. (*Id.* at 7).

As an initial matter, Plaintiffs do not challenge the obligation to register as a sex offender but rather the constitutionality of the notification scheme with which Plaintiffs must comply after registration. (*See* Doc. 27 at ¶ 4). In addition, Plaintiffs do not challenge the prudence or correctness of a state court's decision. Instead, they

---

[3] Defendant cites several Fifth and Tenth Circuit cases for the proposition that framing a federal case designed to review a state court claim as a due process challenge does not allow a plaintiff to circumvent *Rooker-Feldman*. (*See* Doc. 84-1 at 7; Doc. 89 at 3–5). These cases are all inapposite. Each involves a request to the federal court to review the process employed by or the substantive decision making of a state court judge rather than a facial constitutional challenge to a state court statute. *See Millard v. Camper*, 971 F.3d 1174, 1186 (10th Cir. 2020) (due process challenge to two state magistrate judges' rejection of petitions alleging that the judges misapplied the relevant standard); *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (due process challenge to a judge's decision to enter a default alleging that the judge did not afford plaintiff a full and fair opportunity to be heard); *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994) (challenge to a state court judgment regarding the validity of a series of foreclosure sales).

facially challenge the constitutionality of La. Stat. Ann. § 15:542.1.[4]

Such a challenge does not require the court to act as an appellate court by questioning the state court's judgment in Plaintiffs' discrete circumstances but instead calls upon the Court to determine whether the "statute or rule governing the decision" is applicable to all people, including Plaintiffs. Plaintiffs merely ask the Court to fulfill its basic duty of "say[ing] what the law is." *See Marbury v. Madison*, 5 U.S. 137, 177–78 (1803). ("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each . . . This is of the very essence of judicial duty.").

The Court therefore finds that the *Rooker-Feldman* doctrine does not bar the Court's jurisdiction over this action, and accordingly, the Court will not dismiss the case on this basis.

### b. The Ripeness of Defendant Tripp's Claims

A case is "ripe" for decision when it is not dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *See Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "[R]ipeness is peculiarly a question of timing."

---

[4] In their Complaint, Plaintiffs alleged that La. Stat. Ann. § 15:542.1 "is unconstitutional on its face and/or as applied to plaintiffs." (Doc. 27 ¶ 5a). However, in their Reply, Plaintiffs emphasize "[Plaintiff] Tripp's claims, and those of [Plaintiff] Okurowski . . . are facial challenges to the statute rather than as-applied challenges." (Doc. 87 at 6).

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (citation and quotations omitted). "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967), *overruled in part on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

"[A] court must look at two factors to determine ripeness: (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 930 (5th Cir. 2023) (quoting *Abbott Lab'ys*, 387 U.S. at 149).

"First, a claim is fit for judicial decision if it presents a pure question of law that needs no further factual development." *Id.* (citation and quotations omitted). "Issues have been deemed ripe when they would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (citation and quotations omitted). "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Thomas*, 473 U.S. at 581. (citation and quotations omitted).

Second, the Court must evaluate if Plaintiffs have "shown that hardship will result if court consideration is withheld at this time." *See Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). The question is whether "the impact of the [law] upon the [Plaintiffs] is sufficiently direct and immediate as to render the

issue appropriate for judicial review at this stage." *Abbott Lab'ys*, 387 U.S. at 152.

"A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (citing *Thomas*, 473 U.S. at 581). "[A] facial challenge to the constitutionality of a statute presents a pure question of law." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006). However, "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Cent. & S. W. Servs., Inc. v. U.S. Env't Prot. Agency*, 220 F.3d 683, 690 (5th Cir. 2000). When a state imposes compliance burdens on those it regulates or controls, and compliance is coerced by the threat of enforcement, the controversy is both imminent and real. *See Lake Carriers' Ass'n v. MacMullen*, 406 U.S. 498, 508 (1972).

"The assessment of hardship may be complicated, however, by the fact that some rights are more jealously protected than others. When such rights are at issue, ripeness may require a lower probability and gravity of any predicted intrusion." *Deep S. Today v. Murrill*, 779 F. Supp. 3d 782, 800 (M.D. La. 2025) (quoting 13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3532.3 (3d ed. 2024)).

> First Amendment rights have been identified as one of those accorded special ripeness treatment: First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss. In a wide variety of settings, courts have found First Amendment claims ripe, often commenting directly on the special need to protect against any inhibiting chill. Of course, not all First Amendment claims are ripe; at

some point, claims of subjective chilling effect are put aside as too fanciful. Ripeness likewise may be denied if the plaintiff seems able to comply with a challenged regulation without significant cost, if the plaintiff has been able to defy the regulation without apparent loss, or if the desire to protect First Amendment values is offset by the risk that factual ignorance may jeopardize other important values.

*Id.* (internal quotations omitted).

Here, Defendant contends that because Plaintiff Tripp is currently serving a 234-month sentence for his child pornography conviction, he will not be subject to community notification requirements or be permitted to use social media until after his release in 234 months from his sentencing. (Doc. 84-1 at 9–10). Defendant reasons that Plaintiff Tripp's release from prison serves as a contingency that renders his claims regarding the notification requirements speculative and hypothetical. (*Id.* at 10).[5]

Plaintiff Tripp contends that he has already been subject to the notification requirements during the time between periods of incarceration, unlike the plaintiffs in cases cited by Defendant. (Doc. 87 at 9). He also argues that due to his incarceration, his obligation to register and comply with notification requirements has only been suspended and will run anew upon his release. (*Id.*). Regardless, Plaintiff Tripp argues, because he is currently under prosecution for allegedly failing to comply with the statute's notification requirements, the controversy in this case is

---

[5] Defendant cites two Eleventh Circuit cases which support her position. *See Kirby v. Siegelman*, 195 F.3d 1285, 1289–90 (11th Cir. 1999); *United States v. Veal*, 322 F.3d 1275, 1277–79 (11th Cir. 2003). The Court finds these cases to be persuasive but not binding precedent. The cases are also nonetheless inapposite as they involve as-applied challenges in contrast to the facial challenge presented here. *See Kirby*, 195 F.3d at 1289–90; *Veal*, 322 F.3d at 1277–79.

"both imminent and real." (*Id.* at 9–10).

First, the Court finds that Plaintiff Tripp's claims are "fit for judicial decision." Defendant does not assert that additional facts are needed to resolve Plaintiff Tripp's claims, and Defendant raises no reason why the Court would be in a "better position to adjudicate the issues in the future than it is now." Because Plaintiff Tripp asserts only facial constitutional challenges to the statute, he "presents a pure question of law," which does not require further fact development. Additionally, as described in greater detail below, Plaintiff Tripp's "injury is certainly impending."

Second, the Court finds that Plaintiff Tripp has "shown that hardship will result if court consideration is withheld at this time." As a general matter, because this case involves First Amendment claims, which "have been identified as one of those accorded special ripeness treatment," the Court recognizes that "ripeness may require a lower probability and gravity of any predicted intrusion." However, the Court also acknowledges that Plaintiff Tripp must nonetheless "show some hardship in order to establish ripeness."

In determining Plaintiff Tripp's degree of hardship, the Court need not resolve the parties' dispute over whether Plaintiff Tripp's release from prison serves as a contingency that renders his claims speculative and hypothetical. This is because the state is actively imposing compliance burdens on Plaintiff Tripp through its prosecution of his alleged violation of the statute, which is more than certainly impending.

Because Plaintiff Tripp's claims are fit for judicial decision and Plaintiff Tripp

14

will experience hardship if court consideration is withheld, the Court finds Plaintiff Tripp's claims are "ripe" for decision. Therefore, the Court will not dismiss Plaintiff Tripp's claims as premature under the ripeness doctrine.[6]

### 2. Rule 12(b)(6) Arguments

The Court will address each Rule 12(b)(6) argument individually.

### a. Defendant's Alleged Waiver of Rule 12(b)(6) Arguments

"Rule 12(b) requires that 'every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.'" *Guevara v. Walmart Inc.*, No. 4:19-CV-498, 2020 WL 10788714, at *1 (S.D. Tex. May 20, 2020) (quoting Fed. R. Civ. P. 12(b)). "However, courts do not mechanically or routinely deny any motion made after a responsive pleading as untimely. If the defendant has previously included in the answer the defense raised in the motion, thereby giving notice, then courts generally allow Rule 12(b)(6) motions filed after the answer." *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999), *aff'd on other grounds sub nom. Puckett v. Comm'r*, 213 F.3d 636 (5th Cir. 2000).

Plaintiffs argue that because Defendant in her Answer to the Complaint raised the defense that "Plaintiff's Complaint fails to state a claim for a violation of the First Amendment because sex offender registration and notification requirements under the Louisiana laws and statutes do not constitute protected speech," Defendant

---

[6] The Court emphasizes that Defendant does not challenge the ripeness of Defendant Okurowski's claims, which are identical to those asserted by Defendant Tripp. Even if the Court were to dismiss Plaintiff Tripp's claims against Defendant, Defendant would still be subject to Plaintiff Okurowski's claims.

has waived all the Rule 12(b)(6) arguments in her Motion. (Doc. 87 at 4). Plaintiffs contend that Defendant asserts new arguments in her Motion and has thereby denied Plaintiffs notice of these defenses. (*Id.*).

The Court will not "mechanically . . . deny" Defendant's Motion as untimely. Though Defendant ultimately abandoned the particular defense that the speech compelled by the statute "do[es] not constitute protected speech," in her Motion, she nonetheless argues that "Plaintiff's Complaint fails to state a claim for a violation of the First Amendment." The Court finds that Plaintiffs have suffered no prejudice by Defendant's continued assertion that Plaintiffs have failed to state a claim under the First Amendment, though Defendant has refined the precise nuances of Plaintiffs' alleged failure. Therefore, the Court will not deny Defendant's Motion on the basis that she has waived all 12(b)(6) arguments made thereunder.

### b. Defendant's Failure to Seek Dismissal of Plaintiffs' Fourteenth Amendment Claims

Plaintiffs argue that Defendant failed to seek dismissal of Plaintiffs' Fourteenth Amendment claims in relation to La. Stat. Ann. § 15:542.1(D). (Doc. 87 at 18–19).

Defendant contends that since Plaintiffs' Complaint lacks specificity regarding Fourteenth Amendment claims against La. R.S. 15:542.1(D), Defendant's approach is fully responsive to the general equal protection and due process challenges Plaintiffs raised. (Doc. 89 at 6). Defendant points to several places where her Motion in broad strokes addresses general Fourteenth Amendment concepts, such as her

contention that the notification requirements under La. R.S. 15:542.1 serve a compelling public safety purpose and that the statute applies uniformly to individuals within its scope without arbitrary or discriminatory impact. (*Id.*).

However, the term "Fourteenth Amendment" only appears once in Defendant's Motion: "The Plaintiffs contend that the community notification requirements, found in La. R.S. 15:542.1, violate the First Amendment prohibition against compelled speech and constitute a violation of the Fourteenth Amendment Equal Protection Clause." (*Id.*). The next sentence reads "The Attorney General respectfully submits that La. R.S. 15:542.1 does not impermissibly impinge on the plaintiffs First Amendment rights." (*Id.*).

This is representative of Defendant's Motion. While she occasionally describes concepts related to Fourteenth Amendment jurisprudence, Defendant couches these arguments in the context of her First Amendment analysis. Defendant does not address the standard for Equal Protection or Due Process analysis. Perhaps the closest Defendant comes to advancing an Equal Protection argument is the following: "Louisiana's sex offender law is facially constitutional and does not violate . . . the equal protection guarantees set forth in the Constitution . . . Sex offenders are not a suspect or quasi-suspect class, and the statute can pass the rational basis test." (Doc. 84-1 at 5).

Defendant provides conclusions and partial outlines of arguments but does not tether them to the standards necessary for the Court's analysis. While Defendant does ask the Court "for an order dismissing the complaint against it pursuant to

FRCP 12 (b) (1) and (6)," (Doc. 84 at 1), Defendant on a practical level does not provide the Court with sufficiently concrete arguments or analysis for why it should dismiss Plaintiffs' Fourteenth Amendment claims.

Defendant's assertion that the Complaint's vague allegations merit a vague response is not meritorious. Though conclusory allegations or legal conclusions are insufficient defenses to a well-pled motion to dismiss, *Turner*, 848 F.3d at 685, the Court cannot dismiss Plaintiffs' Fourteenth Amendment allegations because Defendant's Motion with respect to those claims does not adequately articulate reasons describing why they should be dismissed.

### c. Plaintiffs' Alleged Waiver of the Right to Challenge the Constitutionality of the Statute

Defendant argues that Plaintiffs' pleas were accepted by the state court and neither Plaintiff alleges that such pleas were vitiated by error or misunderstanding as to the obligations that they agreed to in their plea agreements. (*Id.*). She further contends that Plaintiffs have consented to register as sex offenders as an integral part of their plea agreements and have effectively waived their rights to make a facial challenge to the statute. (*Id.*). Finally, Defendant asserts that even if Plaintiffs could challenge their plea agreements, the only forum in which they can do so is in the state court where the plea was taken. (*Id.*).

As emphasized above, Plaintiffs are asserting facial constitutional challenges to the notification requirements imposed by the statute. They are not challenging their individual plea agreements or asking the Court to review the prudence of any

state court decision. A plaintiff's unconditional plea agreement does not bar the plaintiff from bringing a facial challenge against the statute under which he was prosecuted and sentenced. *See United States v. Ramirez-Nicholas*, 179 F. App'x 917, 918 (5th Cir. 2006) ("Because Ramirez concedes that he is not asserting an as-applied challenge to § 1326(b), we do not address the Government's assertion that any such challenge is barred by Ramirez's unconditional guilty plea and by the appeal-waiver provision of Ramirez's plea agreement.").

Therefore, the Court will not deny Plaintiffs' action on the basis that they have "waived" their right to facially challenge the statute's constitutionality.

### d. The Plausibility of Plaintiffs' First Amendment Claims

Defendant asserts two arguments in support of her contention that Plaintiffs have failed to state a First Amendment Claim. First, Defendant argues that Plaintiffs have failed to state a claim that La. Stat. Ann. § 15:542.1 compels or discourages speech in violation of the First Amendment. Second, Defendant contends that Plaintiffs' First Amendment claim regarding La. Stat. Ann. § 15:542.1(D) should be dismissed because it is subject to intermediate scrutiny and survives intermediate scrutiny analysis.

The Court will address each argument in turn.

### i.   Plaintiffs' Claim that La. Stat. Ann. § 15:542.1 Compels Speech in Violation of the First Amendment

First Amendment protection "includes both the right to speak freely and the right to refrain from speaking at all." *See Wooley v. Maynard*, 430 U.S. 705, 714

(1977). "The right to speak and the right to refrain from speaking are complementary components of the broader concept of individual freedom of mind." *Id.* "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). "To this end, the government, even with the purest of motives, may not substitute its judgment as to how best to speak for that of speakers and listeners." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 791 (1988). "The compelled speech doctrine applies to ideological speech and purely factual, non-commercial speech." *Sanderson v. Bailey*, No. 4:23CV1242 JAR, 2024 WL 3010807, at *5 (E.D. Mo. June 14, 2024) (citing *Riley*, 487 U.S. at 797–98; *Nat'l Inst. of Fam. & Life Advocs. V. Becerra*, 585 U.S. 755, 2372–73 (2018)).

"Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content. Laws that compel speakers to utter or distribute speech bearing a particular message are subject to the same rigorous scrutiny." *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 642 (1994). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

Plaintiffs have met their fundamental pleading burdens here. The statute requires Plaintiffs to notify the public about their sex offender status in the first person to make it appear as if Plaintiffs are speaking of their own free will and endorsing the notification message. (*Id.* ¶ 4c, e). Plaintiffs do not wish to declare or express these government-prescribed messages, yet they do so under the threat of prosecution by the state. (*Id.* ¶ 4h, i). Accordingly, Plaintiffs have alleged that they are subject to government-compelled speech. *See Norgren v. Minn. Dep't of Hum. Servs.*, 96 F.4th 1048, 1057 (8th Cir. 2024) ("To establish a compelled speech claim, [a plaintiff] must demonstrate there was speech to which they objected that was compelled by some governmental action," with compulsion meaning that the government has "exact[ed] a penalty . . . or otherwise coerce[d] [a plaintiff's] acceptance of a particular message." ).

The Parties agree that strict scrutiny applies to Plaintiffs' compelled speech claims, aside from Plaintiffs' claim with respect to La. Stat. Ann. § 15:542.1(D), which the Court addresses below. (Doc. 84-1 at 11–12, 16–18; Doc. 87 at 13–16). Under this standard, Defendant argues at length that the notification requirements serve a compelling state interest and that the speech-compelling provisions of the statute are narrowly tailored to further that interest. (Doc. 84-1 at 11–14). In particular, Defendant references census data not contained in Plaintiffs' Complaint for the

proposition that poor internet service in Louisiana necessitates mail notifications.[7] (Doc. 84-1 at 12). Defendant cites no binding case law that dictates the outcome of this case as a matter of law because no appellate court has judged whether a notification scheme where sex offenders must, in their own voice, carry out the state's notification requirements violates the First Amendment.

The Court will not at this time dismiss Plaintiffs' compelled speech claims with respect to § 15:542.1 for several reasons. Precedent does not resolve this case solely on Plaintiffs' or Defendant's pleadings. Also, both Parties may be required to reference facts not detailed in the Complaint that may be essential to the claims and defenses. Additionally, Plaintiffs have carried their fundamental burden of asserting a sufficiently pled claim for compelled speech.

>    ii.    **Plaintiffs' Claim that La. Stat. Ann. § 15:542.1(D) Compels and Discourages Speech in Violation of the First Amendment and is Overbroad**

The statute requires Plaintiffs to post their sex offender status on any "social networking" profile they may have. (*Id.* ¶ 4g). They do so under threat of prosecution. (*Id.* ¶ 4i). Plaintiff alleges that this discourages them from speaking and participating in the virtual public forum. (*Id.*). Therefore, Plaintiffs have alleged that the statute discourages speech. In addition, as noted above, because Plaintiffs have alleged that § 15:542.1(D) requires Plaintiffs to post their sex offender status under

---

[7] The Court cannot at the motion to dismiss stage of the proceedings accept as true Defendant's factual allegations regarding internet access in Louisiana. As described further below, Defendant will be entitled to offer evidence in support of this assertion at a later stage of these proceedings.

threat of prosecution, Plaintiffs have articulated a compelled speech claim with respect to § 15:542.1(D).

Defendant argues that Plaintiffs' First Amendment challenges to § 15:542.1(D) should nonetheless be dismissed under an intermediate scrutiny analysis.[8] (Doc. 84 - 1 at 16–20). Defendant contends that intermediate scrutiny applies because the notification requirements imposed with respect to "networking sites" constitute content-neutral time, place, and manner restrictions. (*Id.*). Again, Defendant has not cited binding case law that dictates the outcome of this claim as a matter of law. Without such guidance, and where Plaintiffs have demonstrated "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the Court will not at this stage of the proceedings dismiss Plaintiffs' First Amendment claims with respect to § 15:542.1(D).

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Attorney General's Motion To Dismiss For Lack Of Subject Matter Jurisdiction And Failure To State A Claim (Doc. 84)** be and is hereby **DENIED**.

---

[8] Plaintiffs assert that Defendant has only furthered this argument with respect to their over-broadness claim but not their compelled speech and speech inhibition claims regarding § 15:542.1(D), and therefore the Court should only consider Defendant's argument with respect to over-broadness. (Doc. 87 at 14). The Court declines to do so.

**IT IS FURTHER ORDERED** that Plaintiffs' **Motion For Summary Judgment Filed By Plaintiffs (Doc. 78)** be and is hereby **DENIED WITHOUT PREJUDICE** subject to Plaintiffs' right to re-urge the Motion following the conclusion of the discovery period.

**IT IS FURTHER ORDERED** that this matter be and is hereby **REFERRED** to the Magistrate Judge for the issuance of a scheduling order regarding discovery and all related deadlines.

Baton Rouge, Louisiana, this 30th day of September, 2025

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**